**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON**

**RICKY JOE MITCHELL,**

      **Movant,**

**v.**                              **Case No. 2:15-cv-05501**
                                         **Case No. 2:13-cr-00201**

**UNITED STATES OF AMERICA,**

      **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the court is Movant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (ECF No. 87). This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

Movant, Ricky Joe Mitchell (hereinafter "Defendant") worked as a network engineer for EnerVest Operating LLC ("EnerVest"). EnerVest's network had two separate Storage Area Networks ("SANs") which served as the platforms for running all of the software programs jointly used by employees and routed all internal and external e-mail traffic.[2] Defendant had a password that gave him administrator access to update,

---

[1] This procedural history is derived from the Sworn Affidavit of Defense Counsel, David R. Bungard, and the exhibits thereto, including the transcripts of Defendant's criminal proceedings (ECF No. 110).

[2] EnerVest had one SAN in Charleston, West Virginia, which provided network coverage for its "East" region, and one SAN in Houston, Texas, which provided network coverage for its "West" region.

maintain, and otherwise manage all of the operations of the two SANs.  (ECF No. 110 at 1-2).

On June 26, 2012, after learning that he was going to be fired from his job the following day, Defendant remotely logged into EnerVest's computer network through an Internet connection from his home computer.  Defendant gained access to the network using his password and deleted two volumes of data from another "test" SAN in Houston.  That deletion did not affect the overall integrity of EnerVest's computer network because the test SAN was not accessible to the majority of EnerVest's employees, and was not connected to the two production SANs in Charleston and Houston.  However, Defendant then initiated a "reset" command for the two production SANs, with the intent to disrupt business operations on the following business day by returning the servers in each city to their factory default settings.  (*Id.* at 2-3).

While Defendant's actions did not directly disrupt any of EnerVest's production of oil and natural gas, problems resulted with EnerVest's telephones, internet, and servers that lasted for more than six weeks and resulted in the need to hire outside vendors to address the problems.  EnerVest claimed that they incurred losses of over $2 million as a result of Defendant's actions.  (*Id.* at 3).

After Defendant became the target of a grand jury investigation, but before he had been indicted, David R. Bungard, Assistant Federal Public Defender for the Southern District of West Virginia, was appointed to represent him.  The government was initially willing to allow Defendant to enter a guilty plea to an Information charging him with a single felony count of recklessly damaging a protected computer system in violation of 18 U.S.C. § 1030(a)(5)(B), which carried a maximum sterm of imprisonment of five years.  However, when the government produced a copy of the investigative

report prepared by U.S. Secret Service Agent Ken Skaggs for his review, Defendant protested that the majority of the report was "lies" and left out "important details" about what had transpired.  (*Id.* at 5 and Ex. 1).

On or about June 27, 2013, the government submitted a proposed written plea agreement ("the first proposed plea agreement"), which was mailed to Defendant at his residence in Georgia for review.  (*Id.* at 5 and Ex. 2).  Mr. Bungard and Defendant discussed the provisions of the proposed plea agreement by telephone.  Defendant adamantly disputed the proposed restitution amount of $2 million.  Mr. Bungard also pointed out that the first proposed plea agreement also required the entry of a stipulation that Defendant's adjusted offense level under the United States Sentencing Guidelines corresponded to a level 22, which required Defendant to consent to a financial loss calculation in excess of $1 million.  Additionally, the proposed stipulation sought Defendant's admission that he committed specific acts of sabotage to EnerVest's computer system, the majority of which Defendant denied undertaking.   After discussion of these points, Defendant rejected the first proposed plea agreement.  (*Id.* at 5-6).

Following further discussions between Mr. Bungard and the government, on or about July 7, 2013, the government submitted a second proposed plea agreement with certain revisions, including the removal of any dollar amount for the restitution figure, leaving that determination to the district court.  (*Id.* at 6 and Ex. 3).  However, the second proposed plea agreement included a waiver of appeal of the restitution amount, unless that amount exceeded $2,080,000.  The second proposed plea agreement also removed the stipulation concerning the adjusted offense level.  However, it contained a full appellate waiver, unless the sentence imposed by the district court exceeded the

statutory maximum penalty of five years of imprisonment. The proposed stipulation of facts was revised, but still contained language that was objectionable to Defendant. Specifically, Defendant denied that the "reset" command he executed was responsible for deleting a significant portion of EnerVest's business data. (*Id.*)

Upon discussing the provisions of the second proposed plea agreement with Mr. Bungard on July 8, 2013, Defendant stated, "I will not agree to sign anything stating I caused physical damage to any EnerVest asset as that did not happen." (*Id.* at 7 and Ex. 1). On July 23, 2013, Mr. Bungard prepared a detailed letter explaining the provisions of the second proposed plea agreement and potential sentencing outcomes under the Guidelines, and advised Defendant that he had until close of business on July 29, 2013, to accept the second proposed plea agreement, or else the government was going to seek an indictment. (*Id.* at 7 and Ex. 4).

Mr. Bungard's affidavit indicates that, although he believed that Defendant had a defense to the proposed charge under 18 U.S.C. § 1030(a)(5)(B) (because his employer had given him remote access to EnerVest's computer system as part of his employment), Mr. Bungard pointed out that the government could, instead, charge Defendant with a violation of 18 U.S.C. §1030(a)(5)(A) based upon his knowing transmission of a command which intentionally caused damage to EnerVest's computer system, which carried a higher statutory range of imprisonment (0-10 years), and carried an additional four-level sentencing guidelines enhancement. (*Id.* at 7 and Ex. 4 at 6-7).

Based upon the limited information available to him at that time concerning EnerVest's alleged damages, Mr. Bungard presented Defendant with the best and worst case scenarios under the second proposed plea agreement. He stated:

4

> I believe that the best case scenario would present a loss figure somewhere
> between the range of $70,000 to $120,000.  This figure is approximately
> less than 10% of what EnerVest is presently asking for in their $2 million-
> plus spreadsheet.  That would result in an additional eight levels.  You
> would be subject to a two-offense level abuse of trust enhancement based
> upon your use of a special skill (your awareness of the havoc which would
> result by resetting the servers and doing the same by remote access from
> your home) which significantly facilitated the commission of the offense.
> All of these enhancements would result in a total base offense level of 16
> (6+8+2).  By pleading guilty, you are eligible for a three-offense level
> reduction.  With a final base offense level of 13, your advisory guideline
> range would be 12 to 18 months.
>
> Should the Government prevail on the argument pertaining to the amount
> of the actual loss to EnerVest, then a $2 million loss would result in an
> additional 16 levels.  Your total base offense level would be 24 (6+16+2).  If
> you plead guilty, and still receive a three-offense level reduction for
> acceptance, your final base offense level would be 21 with an advisory
> sentencing range of 37 to 46 months.

(*Id.* at 7-8 and Ex. 4 at 3).  Mr. Bungard further advised Defendant of the potential

sentencing implications if he, instead, later plead guilty to a charge under 18 U.S.C. §

1030(a)(5)(A) or was convicted of the same at trial.  (*Id.* at 8 and Ex. 4 at 6-8).

Ultimately, Defendant rejected the second proposed plea agreement.  (*Id.* at 8).

On July 30, 2013, Defendant was indicted in a two-count Indictment charging

him with one count of knowingly causing the transmission of a command which caused

damages to a protected computer system, in violation of 18 U.S.C. § 1030(a)(5)(A), and

one count of intentionally accessing a protected computer system and recklessly causing

damage, in violation of 18 U.S.C. § 1030(a)(5)(B).  (ECF No. 4).  Both counts alleged that

the loss resulting from Defendant's conduct exceeded $1 million.  (*Id.*)

Plea negotiations were suspended for several months as the parties reviewed

discovery, which ultimately consisted of approximately 45,000 digital pages of

materials, and attempted to determine the specifics of EnerVest's damage claims.

Defendant was provided copies of all of the discovery materials.  (ECF No. 110 at 9).

Plea negotiations resumed in late December of 2013, with a new trial date of January 28, 2014. (*Id.*) The correspondence between Defendant and Mr. Bungard during this time indicates that Defendant repeatedly changed his mind about certain provisions contained in four additional plea proposals presented by the government. The loss calculation (and, by virtue thereof, the amount of restitution owed to EnerVest) was a major point of contention that generated much debate. (*Id.* at 9-11 and Exs. 6 and 7).

In particular, on January 8, 2014, a third proposed plea agreement was presented to Defendant, which required him to plead guilty to Count One of the Indictment and included a binding sentencing provision under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. (*Id.* at 10 and Ex. 8 at 4). Under that provision, the parties would agree to "a sentence within the United States Sentencing Guideline range of 17 resulting in a term of imprisonment of at least twenty-four but no more than thirty months." (*Id.*) In the event that the Court refused to accept that agreement, Defendant would have the right to void the agreement and withdraw from the entire plea agreement. The third proposed plea agreement also contained an appellate waiver provision, waiving any appeal unless Defendant's sentence exceeded the statutory maximum. (*Id.*)

The third proposed plea agreement also contained a stipulated loss and restitution amount of $523,621.27. (*Id.* at 10 and Ex. 8 at 2). Defendant retained the right to appeal the order of restitution if it exceeded that amount. (*Id.*) The government represented that this amount was based upon EnerVest's reported "out of pocket expenses" resulting from the damage caused by Defendant and did not include EnerVest's reported "lost productivity" costs. (*Id.* at 10 and Ex. 7 at 1).

6

On January 8, 2014, Mr. Bungard submitted a counter proposal concerning a restitution amount of $400,598.77. (*Id.* at 11 and Ex. 7 at 2). On January 9, 2014, the government presented a fourth proposed plea agreement, which included a stipulation that the restitution amount be reduced to $400,598.77, as suggested by Defendant. Otherwise, the terms of the fourth proposed plea agreement remained the same as those in the third proposed plea agreement, including the Rule 11(c)(1)(C) agreement and the appellate waiver. (*Id.* at 11 and Ex. 9).

According to Mr. Bungard's affidavit, he explained all of these terms to Defendant by letter dated January 9, 2014, and provided Defendant with copies of the applicable provisions of the Sentencing Guidelines to show how the base offense level and the advisory guideline range had been calculated. (*Id.* at 11-12 and Ex. 10). Mr. Bungard further explained that the government was "willing to stipulate, for purposes of arriving at the stipulated sentencing range, that the economic loss to EnerVest caused from your conduct was less than $400,000." (*Id.* at 11 and Ex. 10 at 1). Thus, he advised Defendant that the government agreed to a 12-level enhancement, as opposed to a 14-level enhancement for the loss amount under USSG § 2B1.1, resulting in a total offense level of 17, and an advisory guideline range of 24 to 30 months of imprisonment. (*Id.* at 12 and Ex. 10 at 2).

Mr. Bungard advised Defendant that his Presentence Investigation Report ("PSR") would reflect a higher offense level calculation (accounting for a 14-level enhancement for a loss of $400,598.77) and a four-level enhancement under USSG § 2B1.1(b)(18)(A)(ii), which would place him at a total offense level of 23 and a corresponding advisory guideline range of 46 to 57 months of imprisonment. (*Id.* at 12 and Ex. 10 at 3). Thus, the fourth proposed plea agreement represented a significant

downward variance from the potential guideline sentencing range.  Mr. Bungard further

advised Defendant as follows:

> Please keep in mind that the proposed plea agreement which is before you
> is meant to impose a sentence as if you were being sentenced under Count
> Two which does not include the four offense level enhancement for the §
> 1030(a)(5)(A) conduct.  You remain free to plead to Count One without the
> proposed stipulated sentence and take your chances with Judge
> Copenhaver that he would impose a sentence lower than the advisory
> guideline range of 46 to 57 months.

(*Id.* at 12-13 and Ex. 10 at 3).  Thereafter, Defendant sent Mr. Bungard several e-mails

questioning the soundness of the provisions of the fourth proposed plea agreement.  (*Id.*

at 13-14 and Ex. 6).  On January 15, 2014, Defendant rejected the fourth proposed plea

agreement, advising counsel that "this deal I am being offered is not close to what I feel

my punishment should be for what I did."  (*Id.* at 14 and Ex. 6).

On January 17, 2014, the Government presented a fifth proposed plea agreement,

which required Defendant to plead guilty to Count One of the Indictment, with an

agreement that the amount of restitution would be $406,503.02, based upon

expenditures reflected in a damages spreadsheet prepared by EnerVest.  (*Id.* at 14 and

Ex. 13).  The fifth proposed plea agreement also contained the same Rule 11(c)(1)(C)

agreement resulting in a proposed term of imprisonment of 24 to 30 months, followed

by a three-year term of supervised release, and an appellate waiver if Defendant were

sentenced within that range.  (*Id.* at 14 and Ex. 12 at 4).

On January 20, 2014, Defendant inquired about whether the proposed

stipulation of facts could be changed.  He further indicated that he would not challenge

the restitution amount because he was "tired of fighting."  (*Id.* at 15 and Ex. 6).  Mr.

Bungard redrafted the stipulation of facts, which was approved by Defendant, and

submitted it to the government.  On January 21, 2014, Defendant executed the proposed

plea agreement with the revised stipulation of facts.  (*Id.* at 15 and Ex. 14).  Thus, a guilty plea hearing was scheduled on January 28, 2014, the date that Defendant was scheduled to go to trial.

> However, on January 27, 2014, Defendant sent an email to Mr. Bungard stating:
>
> But I have been reading through the discovery.zip files this weekend and I see evidence that the CRW SAN was powered off at 6/27/12 at 3:17 am EST.  I also see evidence where the Houston email was deleted on July 2 by an administration error on the system administrator['s] part (it was running on a snapshot that was set to delete automatically).  I do not believe I should be responsible for the costs associated with the recovery of the Houston email from July 2.

(*Id.* at 15 and Ex. 6).  Then, on January 28, 2014, Mr. Bungard met with Defendant in advance of the guilty plea hearing, and Defendant indicated that he was not willing to proceed with the signed plea agreement, and that he now wanted to contest the entire amount of restitution at sentencing.  (*Id.*)

When Mr. Bungard informed the District Court of Defendant's intention to withdraw from the plea agreement, the Court gave the parties additional time to confer to see if an acceptable agreement could be reached, but warned the parties that trial would proceed on the following Monday, if they could not reach an agreement.  (*Id.* at 16 and Ex. 15 at 3).

Later that day, the government presented a sixth proposed plea agreement, which removed all provisions regarding a stipulated amount of restitution, and revised the appellate waiver provision to preclude Defendant from appealing any order imposing restitution at sentencing.  (*Id.* at 16 and Ex. 16 at 3).  Furthermore, the sixth proposed plea agreement contained no agreement concerning the guideline offense level and no stipulation of facts.  Thus, the government's position was that, upon acceptance of this proposed plea agreement, Defendant would have to waive all of his appeal rights with

respect to the sentence imposed, if it was within the statutory range for his offense.  (*Id.* at 16-17 and Ex. 16 at 4).  Mr. Bungard's affidavit indicates that he specifically pointed out the appellate waiver provision to Defendant when they met to discuss this proposed agreement.  (*Id.* at 16-17).

Mr. Bungard's affidavit further states that Defendant was well aware of the implications of withdrawing from the January 21, 2014 plea agreement and accepting the January 28, 2014 plea agreement and that they specifically discussed Defendant's sentencing exposure as a result thereof.  (*Id.* at 17).  As noted in the affidavit:

> Mr. Mitchell was told that even if the Court determined that the financial loss to EnerVest was less than $400,000, his final offense level (with consideration for acceptance) would be 21 and would result in an advisory guideline range of 37 to 46 months.  (Ex. 11).  Mr. Mitchell was told that this would be the starting point for sentencing and would be significantly higher than the previously negotiated range of 24 to 30 months.  (Ex. 11).  Moreover, if the Court determined that the loss amount was higher than $400,000 but less than $1 million, the final offense level would be 23 and would result in an even higher advisory guideline range of 46 to 57 months.  (Ex. 11).  Counsel further explained to Mr. Mitchell that he was exposing himself to a potentially higher restitution order as EnerVest was claiming more than $2 million in losses.  Mr. Mitchell told counsel that the District Court should be allowed to impose a lesser prison sentence (somewhere around 18 months) as well as a restitution order that was significantly less than the $2 million being sought by EnerVest.

(*Id.* at 17 and Ex. 11).

Nonetheless, Defendant entered into the sixth proposed plea agreement, and the parties appeared before the District Court for a guilty plea hearing at 3:15 p.m. on January 28, 2014.  (*Id.* at 17-18 and Ex. 16).  During the plea hearing, Defendant indicated his intent to plead guilty to Count One of the Indictment.  (*Id.* at 17-18 and Ex. 17).  He acknowledged that he understood the nature and elements of the charge and was aware of the maximum potential penalties.  (*Id.*, Ex. 17).  He further acknowledged that he understood that the Court would determine the sentence and the amount of

restitution and that he understood the appellate waiver. (*Id.*) Defendant further acknowledged that he was satisfied with Mr. Bungard's performance and that Mr. Bungard had fully and fairly represented him. (*Id.*) The Court accepted Defendant's factual basis for his guilty plea and found that the plea was knowing and voluntary, with a full understanding of the consequences of the same. (*Id.*)

Between May 13-15, 2014, the parties presented evidence and extensive argument concerning the loss figure, the applicable guideline range, and restitution. (ECF No. 110, Exs. 20-22.) On May 20, 2014, the parties reconvened for sentencing and the presiding District Judge made findings of fact, in which he determined that the applicable loss calculation, which also served as the amount of ordered restitution, was $428,204.68. (ECF No. 110, Ex. 23 at 370-71; ECF No. 78). Specifically, the District Court calculated the loss to EnerVest resulting from Defendant's conduct to be $424,204.68, and further found that such amount was reasonably foreseeable to Defendant. (*Id.*) However, the District Court determined that the "lost productivity" calculations sought by EnerVest were too speculative to be included in the loss or restitution amounts. (*Id.*)

The District Court further found that Defendant's adjusted guideline level was 23, with a criminal history category of I, resulting in a guideline sentencing range of 46-57 months. Defendant was sentenced to 48 months in prison, followed by a three-year term of supervised release. (ECF No. 110, Ex. 23 at 385-86, 404; ECF No. 81 at 2-3). He was further ordered to pay restitution in the amount of $424,204.68, a fine of $100,000, and a $100 special assessment. (ECF No. 110, Ex. 23 at 370, 404; ECF No. 81 at 5).

Defendant did not appeal his conviction or sentence to the United States Court of Appeals for the Fourth Circuit. However, on April 30, 2015, he filed the instant Motion

to Vacate, Set Aside, or Correct Sentence (ECF No. 87). The section 2255 motion asserts

the following grounds for relief:

    1.    Mr. Bungard negotiated Movant/Defendant's plea with the United States Prosecuting Attorney prior to informing Movant/Defendant of his sentence calculation.

    2.    Mr. Bungard did not properly advise Movant/Defendant that the charge to which he pled guilty carried a four (4) point sentencing guideline enhancement.

    3.    Mr. Bungard did not properly advise Movant/Defendant of the potential sentence if Movant/Defendant rejected the U.S. Attorney's initial plea offer of a 24-36 month sentence.

    4.    Mr. Bungard did not negotiate Movant/Defendant's right to appeal sentence and restitution amount.

    5.    Mr. Bungard did not calculate the damages Movant/Defendant would have to pay in restitution until after the guilty plea was signed.

    6.    Mr. Bungard did not offer expert testimony on behalf of the Movant/Defendant.

    7.    Mr. Bungard did not depose a key witness prior to subpoenaing the same key witness at the Movant/Defendant's sentencing hearing.

    8.    Mr. Bungard did not allow Movant/Defendant to testify on his own behalf at sentencing.

(ECF No. 87 at 13-15).

On May 11, 2016, the United States filed a Response to the section 2255 motion

(ECF No. 109), supported by the Sworn Affidavit of Defense Counsel (ECF No. 110),

which was also ordered by the court. On July 8, 2016, Defendant filed a Reply (ECF No.

113). This matter is ripe for adjudication.

## **ANALYSIS**

The Supreme Court addressed the right to effective assistance of counsel as

guaranteed by the Sixth Amendment in *Strickland v. Washington*, 466 U.S. 668 (1984),

in which the Court adopted a two-pronged test. The first prong is competence; movant must show that the representation fell below an objective standard of reasonableness. *Id.* at 687-91. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel. *Id.* at 688-89.

> In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690. This inquiry is directed at whether defense counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). As noted by Respondent, "[t]he question is whether counsel made errors so fundamental that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *Id.* at 88. (ECF No. 113 at 6).

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice. *Id.* at 697. Using this standard, the undersigned will address each claim of ineffective assistance of counsel asserted by Defendant.

## A.    Defendant's guilty plea was knowing and voluntary.

In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court reiterated that the Sixth Amendment right to effective assistance of counsel applies during the plea negotiation stage of the criminal process.  The Court confirmed that, "[i]n the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."  *Id.* at 163.  Furthermore, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy."  *Fields v. Attorney Gen.*, 956 F.2d 1290, 1299 (4th Cir. 1992); *see also Beck v. Angelone*, 261 F.3d 377, 396 (4th Cir. 2001) ("absent clear and convincing evidence to the contrary," defendant is bound by statements made under oath at Rule 11 hearing).

Defendant's plea colloquy demonstrates that Defendant was fully aware of the terms and conditions of the plea agreement and his guilty plea, and he acknowledged that he was knowingly and voluntarily entering into the same.  Defendant further acknowledged that he was fully satisfied with the performance and assistance of his counsel, and he has not demonstrated, by clear and convincing evidence, that he should not be bound by those representations.  Such representations include his specific acknowledgement that he understood the effect of his guilty plea and the appellate waiver contained in his written plea agreement.

Further, Defendant was advised by the Court during the plea hearing that the guideline calculation could not be determined until after the PSR was prepared and all objections thereto resolved, and that any estimate given by counsel was not a guarantee of Defendant's sentence.  Moreover, Defendant specifically denied that anyone had

14

promised him something that was not discussed on the record during the hearing. Accordingly, the Court found that Defendant's guilty plea was knowing and voluntary.

As noted in the Government's Response, in *United States v. LeMaster*, 403 F.3d 216, 221 (4th Cir. 2005), the Fourth Circuit held that, absent extraordinary circumstances, a district court is not required to conduct an evidentiary hearing concerning a challenge to a guilty plea, where the defendant's allegations contradict the defendant's sworn statements made during a proper Rule 11 colloquy. *Id.* Rather, the district court may find that such allegations are "palpably incredible" and "patently frivolous and false." *Id.*

The government's Response asserts that "it is abundantly clear that defense counsel provided effective representation to defendant at all pertinent stages – during plea negotiations and the sentencing level. Defendant's Motion is simply based upon his dissatisfaction with his sentence rather than any meritorious ground." (ECF No. 109 at 7). Dividing Defendant's claims into those alleging ineffective assistance during the plea process and those alleging ineffective assistance related to sentencing, the undersigned will address each claim in turn.

## B. Failure to advise Defendant of the proposed sentence and restitution amount until after the plea agreement was reached.

In Ground One of his section 2255 motion, Defendant contends that Mr. Bungard negotiated his plea prior to informing Defendant of his sentence calculation. His motion states:

> Movant/Defendant states that his counsel should have notified him at all points during any negotiations with the U.S. Attorney prior to a plea agreement coming to fruition. Only until **AFTER** the plea agreement was offered did Movant/Defendant know about the proposed sentence calculation. Movant/Defendant did not have an opportunity to voice his concerns during plea negotiations; therefore, when the plea agreement

15

was offered to the Movant/Defendant, he had little choice but to either accept or decline the conditions afforded to him.

(ECF No. 87 at 13).  Similarly, in Ground Five of the section 2255 motion, Defendant asserts that Mr. Bungard did not calculate the damages Defendant would have to pay in restitution until after the guilty plea was signed.  His motion states:

> Prior to Movant/Defendant signing the second proposed plea, Mr. Bungard was aware of the extent of damages alleged by EnerVest Operating LLC.  Moreover, the amount of damages alleged were known as far back as when the grand jury met and indicted the Movant/Defendant. Simply put, Mr. Bungard had ample time to calculate what amount of restitution Movant/Defendant could be ordered to pay back to EnerVest Operating LLC.  At no time during meetings after Movant/Defendant's initial appearance did Mr. Bungard attempt to calculate an amount of restitution.  At no time during the plea negotiations did Mr. Bungard attempt to calculate an amount of restitution.  Only AFTER the second proposed plea agreement was signed on January 28, 2014, and DURING Movant/Defendant's sentencing hearing in May, 2014, did Mr. Bungard attempt to determine and argue what amount of restitution Movant/Defendant may owe to EnerVest Operating LLC.  Knowing a ballpark amount prior to Movant/Defendant signing off on a plea agreement would have been detrimental in Movant/Defendant's decision on whether to sign the initial plea offered, which would have potentially reduced his sentence from the 48 months he is currently serving to the "no less than twenty-four and no more than thirty months" offered by the United States in the first proposed plea.  Mr. Bungard did not perform his due diligence in the months leading up to Movant/Defendant's sentencing date, especially in light of the fact that the United States was going to propose some sort of plea offer.

(ECF No. 87 at 14-15).

The record before the court demonstrates that these claims are frivolous.  As noted in the government's Response:

> First, regarding defendant's claim that his counsel did not advise him of the proposed sentence until after the subject plea agreement was offered, defense counsel has refuted that claim in great detail.  Defendant received five proposed plea agreements before finally pleading under the subject plea agreement.  [Footnote omitted].  Counsel thoroughly reviewed each proposed plea agreement with defendant, and advised him of the potential sentences for each plea agreement.  Defendant repeatedly rejected or withdrew from the offered plea agreements – pre-indictment and post-

> indictment, before he ultimately entered into the subject plea agreement.
> (Aff. at 5-17).  The attachments to defense counsel's affidavit underscore
> the detailed and professional advice defendant received from his counsel
> about all aspects of the plea agreements, including his potential sentencing
> exposure.  (*Id.*)

(ECF No. 109 at 8).

The government's Response further contends that Defendant's claim that Mr.
Bungard did not attempt to calculate the restitution amount until after the plea
agreement was signed is also belied by logic and the record.  The Response states:

> The district court ordered restitution in the amount of $428,204.68.
> (5/20/14 tr. at 366-68.)  Defendant had earlier offered to make nearly this
> amount in restitution after his receipt of the government's third proposed
> plea agreement - $400,598.77 (Aff. at 11-12.)  Soon thereafter, defendant
> signed a January 17, 2014, plea agreement and (revised) stipulation of
> facts in which he agreed to make restitution in the amount of $406,503.02
> (Aff. at 14.)  Defendant withdrew from this plea agreement, and ultimately
> pleaded guilty pursuant to the subject plea agreement.  (Aff. at 15-16.)
> These negotiations illustrate that defendant was well aware of the
> potential restitution order he faced.  [Footnote omitted].

(*Id.* at 10-11).

Defendant's Reply asserts that during the pre-indictment negotiations, the
government offered two proposed plea agreements with what Defendant describes as a
"seriously high" amount of restitution.  (ECF No. 113 at 1).  His Reply further states that
"Mr. Bungard admitted in his affidavit that there was limited information concerning
the damages sought by EnerVest; however, he continued to advise Movant of his plea
options."  (*Id.*)  Thus, Defendant's claim appears to be grounded in his belief that Mr.
Bungard was advising him without having reviewed all of the evidence the government
possessed at that time.  (*Id.* at 1-2).  His Reply further asserts that Mr. Bungard "based
all of the sentencing ranges upon speculation; not upon whether or not what the actual
loss value was."  (*Id.* at 2).  Thus, Defendant claims, he "refused to accept a plea offer

which he felt was not in his best interests given the limited amount of information provided to and by his counsel." (*Id.*)

Defendant further asserts that, only after he was indicted did Mr. Bungard seek, in earnest, additional information to formulate a defense and to determine the loss amount. Defendant further contends that, when pressed with specific questions from Defendant, Mr. Bungard "replied with what he felt the Government would do, not what the Government's response was to [Defendant's] specific inquiry." (ECF No. 113 at 2-3). His Reply further states:

> Movant's assertions that counsel was ineffective during these times are touched upon in Mr. Bungard's affidavit. Movant's options were discussed in a variety of sentencing scenarios and options based upon the amount of restitution that would be owed by Movant. The restitution amount depended upon the damages claimed by EnerVest and allowed by the District Court. Despite going through scenario after scenario, sentencing range after sentencing range, and looking at spreadsheets of what was claimed damages, there was nothing ever finally calculated as to what specific damages were incurred by EnerVest, only what they claimed their damages were. Mr. Bungard did not do anything to try to disprove any alleged damages, nor did he try to dispute any of the amounts EnerVest alleged to have incurred. Movant did not want to take any chance of pleading guilty based on the damages EnerVest solely claimed; he wanted his counsel to make sure that the damages they were claiming were actual damages incurred as a result of his reset of the SAN server.

(ECF No. 113 at 3).

It is evident from the record that Mr. Bungard thoroughly advised Defendant about the potential sentencing possibilities, exhaustively reviewed the damage calculations and evidence provided by EnerVest, and negotiated a more favorable plea agreement, which was ultimately rejected by Defendant. Once Defendant rejected the negotiated guideline calculation and loss/restitution amount in the earlier proposed plea agreements, Mr. Bungard could not guarantee any sentence or loss/restitution calculation, which was left to the district court's determination. Nonetheless, Mr.

Bungard vigorously argued for the lowest possible guideline level and loss/restitution calculations at sentencing.

The undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that Mr. Bungard's conduct fell below an objective standard of reasonableness, or that Defendant suffered undue prejudice as a result of Mr. Bungard's performance.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Defendant is not entitled to any relief on Grounds One or Five of his section 2255 motion.

### C.    Failure to advise Defendant of consequences of rejecting the plea agreements containing the 24-36 month sentencing range.

In Ground Three of his section 2255 motion, Defendant contends that Mr. Bungard did not advise him of the potential sentence he would receive if he rejected the proposed plea agreements which contained a negotiated 24-36 month sentencing range under Rule 11(c)(1)(C).  His motion states:

> The basis for the Movant/Defendant's rejection of the January 9, 2014 first plea proposal was due to the parties not agreeing on the amount of restitution owed.  Therefore, Mr. Mitchell rejected the plea offer.  On January 28, 2014, the United States offered a different plea agreement (i.e., second proposed plea), which did not include the Rule 11(c)(1)(C) paragraph.  The sole discretion of sentencing was up to the Court.  Mr. Bungard, however, did not advise Movant/Defendant of the fact that the Court could impose a sentence longer than what was initially offered by the United States in the January 9, 2014, proposed plea. Movant/Defendant was under the guise that since the offer had been tabled, and he was still pleading guilty to the same charge, the only dispute was monetary damages.  Movant/ Defendant believed that the Court would consider the same twenty-four to thirty month sentence that was initially offered by the United States.

(ECF No. 87 at 13-14).

Similarly, in Ground Two of the section 2255 motion, Defendant contends that Mr. Bungard provided ineffective assistance because he failed to advise Defendant that

the charge to which he ultimately pled guilty exposed him to a four-level enhancement under section 2B1.1(b)(18)(A)(ii), and that Mr. Bungard should have negotiated a plea agreement to a "lesser charge."  His motion states:

> Movant/Defendant believes that counsel should have negotiated a plea deal wherein he would not have received a four (4) point enhancement towards his sentence.  Movant/Defendant was charged with two (2) counts in the original indictment.  As plea negotiations moved forward, it was apparent to both sides that Movant/Defendant was going to plead guilty and that that guilty plea would have involved restitution.  Mr. Bungard, at no time, offered for the Movant/Defendant to plead guilty to the lesser charge, which would have been a reduction in points during sentencing. Even had Movant/Defendant pled to the lesser charge, he still would have been required to pay restitution.  Pleading guilty to a lesser charge may have resulted in a lesser sentence, which in turn would have meant that the Movant/Defendant would be released from custody in a shorter amount of time, thereby allowing him to begin paying restitution at an earlier date.

(ECF No. 87 at 13).

The government's Response, as supported by Mr. Bungard's affidavit, contends that "defendant was well aware of the risks that he was taking by withdrawing from the prior proposed binding plea agreement which contained a 24-30 month sentencing range."  (ECF No. 109 at 8-9; ECF No. 110 at 17).  The government further contends that the claims that Mr. Bungard failed to negotiate a plea to a lesser charge and failed to advise Defendant about the four-level sentencing enhancement are equally meritless. (ECF No. 109 at 9).  The Response further states:

> First, defendant withdrew from a binding plea agreement which specified a 24-30 month sentencing range.  (Aff. at 19.)  At that time, defense counsel "explained to [defendant] that by backing out of the plea agreement, he was exposing himself to the four-offense level enhancement" applicable to the charge to which he did plead guilty.  (*Id.*) Second, at this point in the plea negotiations and in light of the procedural posture of the proceedings, there was no option for defendant to plead guilty to the lesser offense in the indictment.  (*Id.*)

> The claim that his counsel did not advise him that the subject plea agreement exposed him to a greater sentence than one that he had earlier rejected likewise fails.  Defense counsel diligently explained to defendant the sentencing ramifications caused by withdrawing from the January 21, 2014, binding plea agreement and pleading under the subject plea agreement (of January 28, 2014).  (Aff. at 20-21.)  Further, defendant, through his counsel, made numerous objections to the Pre-Sentence Report, and filed a lengthy sentencing memorandum noting his objections. (Aff. at 21-22.)

(ECF No. 109 at 9-10).

Defendant does not specifically address this claim in his Reply.  He does generally assert that he did not accept the earlier plea agreements from the government because he "felt his counsel did not adequately fight for his chance at a better plea option."  (ECF No. 113 at 3).  He believes that the plea options were "based on what the government ultimately decided to show him, not on his counsel's own investigation into the damages . . . ."  (*Id.*)

The undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that Mr. Bungard's conduct fell below an objective standard of reasonableness, or that Defendant suffered undue prejudice as a result of Mr. Bungard's performance.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Defendant is not entitled to relief on Grounds Two and Three of his section 2255 motion.

### D.    Failure to negotiate right to appeal sentence and restitution.

In Ground Four of his section 2255 motion, Defendant contends that Mr. Bungard provided ineffective assistance of counsel because he failed to negotiate Defendant's right to appeal his sentence and the restitution amount.  His motion states:

> As part of Movant/Defendant accepting the January 28, 2014, second proposed plea offered by the United States, he had to waive his right to appeal the sentence and any restitution amount ordered by the Court.  It

21

> appears, on its face, that the United States solely dictated the language
> contained in the plea offered and signed off on by Movant/Defendant. It
> does not appear that Mr. Bungard acted in Movant/Defendant's best
> interests by not trying to at least curtail some of the United States'
> restrictions, even though Movant/Defendant did agree to their plea offer.

(ECF No. 87 at 14).

The government's Response rebuts this claim by emphasizing that it was "standing firm on the appellate waiver as a requirement of a pre-trial resolution[]" and Defendant was advised of that fact by Mr. Bungard. (ECF No. 109 at 10; ECF No. 110 at 22-23). Moreover, Defendant knowingly and voluntarily signed the subject plea agreement, which contained the full appellate waiver, and he acknowledged his understanding and acceptance of the waiver during the plea colloquy. As noted in section A above, he is bound by those representations.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that Mr. Bungard's conduct fell below an objective standard of reasonableness, or that Defendant suffered undue prejudice as a result of Mr. Bungard's performance. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Defendant is not entitled to relief on Ground Four of his section 2255 motion.

### E.    Failure to offer expert testimony to refute restitution amount.

In Ground Six of his section 2255 motion, Defendant asserts that Mr. Bungard provided ineffective assistance of counsel because he failed to offer expert testimony to rebut the Government's assertions concerning the amount of EnerVest's losses. His motion states:

> Simply put, this is an error on Mr. Bungard's part. Considering the
> amount of monetary restitution that was tabled to be paid back, an expert
> should have been hired to refute the United States' calculations. In

> addition to monetary damages, there was no computer/technological expert hired to state what Movant/Defendant did caused the extent of damages claimed by the United States. ***No expert was hired, and no expert testimony was given by anyone on Movant/Defendant's behalf.***

(ECF No. 87 at 15).

The government's Response contends that determining what witnesses to call in a case is a "classic tactical decision" that is left to counsel and cannot demonstrate ineffective assistance of counsel. *See Strickland,* 466 U.S. at 699; *see also United States v. Chapman*, 593 F.3d 365, 369 (4th Cir. 2010); *United States v. Terry,* 366 F.3d 312, 317-18 (4th Cir. 2004); *United States v. Best,* 219 F.3d 192, 201 (2d. Cir. 2000). (ECF No. 109 at 13). The government further asserts that Defendant has overlooked the fact that Mr. Bungard did hire a computer forensics firm to determine whether the alleged damages claimed by EnerVest were reasonable and could be mitigated. (*Id.*). The Response further states:

> Defense counsel made a tactical decision not to proceed with a technical test of the claimed damages by said firm; it was expensive and its outcome and effect on the judicial finding of loss and restitution uncertain. (Aff. at 26-27). *See Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) (an allegation of inadequate investigation does not warrant relief absent a proffer of what favorable testimony would have been produced).
>
> Further, defense counsel's cross-examinations of the government's witnesses at sentencing about the pertinent loss and restitution figures were lengthy and thorough. Defendant does not claim otherwise. *Bower v. Quarterman*, 497 F.3d 459 (5th Cir. 2007) (defense counsel's decision not to call an expert witness was not ineffective where counsel made a tactical decision to cross-examine the government witness instead). Thus, defendant's claim on this ground must be rejected. [FN 5 – *See also Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990) (defendant could not establish ineffective assistance under *Strickland* on the general claim that witnesses should have been called).]

(*Id.* at 13-14).

Defendant's Reply contends that "Mr. Bungard did not consult with or explain his strategy as to why he did not allow further work of Global to be performed with Movant. He simply made the decision, without Movant's input." (ECF No. 113 at 4). Therefore, Defendant contends that he was "prejudiced as to how a foundation of a defense would be laid at sentencing." (*Id.* at 4). He further states:

> At a minimum, Movant should have been able to consult with the representative from Global with respect to what he did in disabling the SAN server. By communicating his actions, Global could have had a clearer picture of what took place prior to the acts of others in trying to reset the server. However, that did not happen. Mr. Bungard made the decision to only allow Global to review documentation and then made the decision to not allow them to do any additional testing.

(*Id.*)

Defendant contends that Mr. Bungard's failure to engage Global to recreate the resetting command on a test server prohibited him from demonstrating that actions taken by others after his conduct caused even more damage to the SAN servers and, thus, denied him the ability to present a defense on that basis. (*Id.* at 5-6). His Reply further contends:

> Additionally, without having a representative at Global at the sentencing hearing for cross-examination purposes, there was no expert to refute ANY testimony provided by Eric Eaches at sentencing. Mr. Eaches was even contradicted by his own EnerVest staff member as to what certain diagnostic logs showed, right there proving that he was not 100% knowledgeable of the servers he was to oversee. If another IT member of the same company can disprove what he said, on the record, then certainly someone who has been proven as an expert in the same field could disprove his statements, as well.

(*Id.* at 6).

Defendant has not offered any specific evidence that an expert witness could have offered that would have changed the outcome of his sentencing proceeding. His argument is entirely speculative that an expert witness from Global would have run a

test resetting and that such resetting without further action would have demonstrated that the damages incurred by EnerVest were exacerbated by the actions of others, such that the loss amount and restitution resulting from Defendant's actions should have been reduced.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not sufficiently demonstrated that Mr. Bungard's performance fell below an objective standard of reasonableness in failing to offer expert testimony at his sentencing or that he suffered undue prejudice as a result thereof. Therefore, the undersigned further proposes that the presiding District Judge **FIND** that Defendant is not entitled to relief on Ground Six of his section 2255 motion.

### F.    Failure to depose Nathan Johnson prior to calling him as a witness at sentencing.

In Ground Seven of his section 2255 motion, Defendant asserts that Mr. Bungard provided ineffective assistance of counsel because he failed to depose Nathan Johnson prior to calling him as a witness at Defendant's sentencing. His motion states:

> Mr. Bungard did not depose Nathan Johnson, a key witness and co-worker of Movant/Defendant prior to calling him as a witness at the sentencing hearing. Had Mr. Bungard deposed Mr. Johnson, he would have known what Mr. Johnson was going to say at sentencing. Most importantly, he would have been in a position to hire an expert to either agree with, or refute, Mr. Johnson's testimony at Movant/Defendant's sentencing hearing.

(ECF No. 87 at 15).

The government asserts that this claim also lacks merit. Its response contends that it was Defendant's decision to call Mr. Johnson as a witness, but EnerVest, Mr. Johnson's employer, refused to make him available to the defense in advance of

sentencing.  (ECF No. 109 at 14-15; ECF No. 110 at 27-28).  Mr. Bungard's affidavit addresses this claim as follows:

> Mr. Mitchell believed that Mr. Johnson would support his argument that EnerVest's or Dell's negligence during the early morning hours of June 27, 2012, served as the proximate cause for the majority of EnerVest's damage claims.  Counsel recalls inquiring with EnerVest's counsel if their employees could be interviewed by counsel prior to sentencing. EnerVest's counsel refused counsel's request so no such interviews took place.  Counsel followed Mr. Mitchell's request and subpoenaed Mr. Johnson to appear for Mr. Mitchell's sentencing.  Counsel's response to Ground No. 8 sets forth the relevant portions of Mr. Johnson's testimony to the District Court at sentencing.

(ECF No. 110 at 27-28).

As further noted in Mr. Bungard's affidavit, Mr. Johnson was the employee who was called on the night of June 26, 2012, to contend with the problems created by Defendant's reset command to the Charleston SAN.  Mr. Johnson testified that, when he went into the IT room in Charleston, the Charleston SAN still had power running to it. (ECF No. 110 at 30 and Ex. 21 at 268).  He further stated that the power was disconnected as he and Mr. Eaches were trying to figure out how to restore service.  (*Id.* at 31 and Ex. 21 at 269).  Mr. Johnson admitted that there was a possibility that the disruption in power could result in data corruption, or that the Charleston SAN could have sustained a power surge when the power plug was pulled while the unit was still powered.  (*Id.* at 31 and Ex. 21 at 270).

Mr. Johnson further testified that other messages in the diagnostic log for the Charleston SAN could indicate that there were problems with the hardware of the unit, and that some of the bad hard drives that were replaced on the Charleston SAN could have been the result of bad hardware.  He further acknowledged that these bad drives could have "made it impossible for Dell to recover the system that night."  (*Id.* at 31 and

Ex. 21 at 289-90). He further conceded that these "bad or missing blocks" could have been caused by the power interruption caused when Mr. Eaches unplugged the SAN. (*Id.* at 31 and Ex. 21 at 290).

Defendant's Reply contends that "Mr. Johnson was the individual that contradicted Mr. Eaches' testimony at sentencing relative to the diagnostic logs." (ECF No. 113 at 6). Defendant contends that, had Mr. Johnson been deposed prior to the sentencing hearing, Mr. Bungard would have known what his testimony would be and he "would have possibly been able to discredit Mr. Eaches even more during his sentencing testimony." (*Id.* at 6-7). Defendant further contends that the government's assertion that EnerVest would not make Mr. Johnson available in preparation for sentencing is "ridiculous." (*Id.* at 7). He then asserts that Mr. Bungard could have filed a Notice of Deposition under Rule 30 of the Federal Rules of Civil Procedure. (*Id.*) However, such rules are inapplicable in a criminal proceeding.

Mr. Johnson's testimony indicating that there may have been other causes that contributed to EnerVest's losses was helpful, not harmful, to Defendant. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that Mr. Bungard's conduct in calling Mr. Johnson as a witness without previously deposing him did not fall below an objective standard of reasonableness and did not unduly prejudice his defense. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the Defendant is not entitled to relief on Ground Seven of his section 2255 motion.

### G.    Failure to allow Defendant to testify at sentencing.

In Ground Eight of his section 2255 motion, Defendant contends that Mr. Bungard provided ineffective assistance of counsel because he failed to allow Defendant to testify at his sentencing.  (ECF No. 87 at 15).  His motion states:

> Movant/Defendant wanted to speak to the Court directly regarding his actions and what he did to help mitigate the damages caused to EnerVest Operating LLC.  Although Movant/Defendant made it clear to Mr. Bungard that he wanted to testify, he was denied that opportunity by his counsel.

(*Id.*)

The government's Response, as supported by Mr. Bungard's affidavit, indicates that Defendant and Mr. Bungard discussed the possibility of him testifying at sentencing.  However, "[b]ased upon the successful cross-examinations of the government's witnesses, and to avoid losing credit for acceptance of responsibility, defense counsel advised defendant not to testify."  (ECF No. 109 at 15; ECF No. 110 at 28-31).  The government's Response further states:

> The wisdom of counsel's advice and the effectiveness of his cross-examinations are underscored by the district court's rejection of the bulk of the government's requests for loss and restitution and the court's granting of a three-point reduction for acceptance of responsibility -- over the government's strenuous objections.  (5/20/14 Tr. 366-71, 384-85.)  Moreover, defendant was sentenced to the low end of the adjusted guideline range due to defense counsel's performance -- a 48-month sentence instead of up to 57 months. [FN 6 – Of note, defendant does not claim that his testimony would have resulted in a lesser sentence.]

(ECF No. 109 at 15-16).  Thus, the government contends that the decision not to have Defendant testify was a sound strategic choice that is not subject to scrutiny under *Strickland*.  (*Id.* at 16).  Defendant did not specifically address this claim in his Reply.

Defendant has not demonstrated that his testimony at sentencing would have made a difference in the outcome of his sentence, and the government has aptly

suggested that it may have been harmful to his receipt of the reduction for acceptance of responsibility.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that Mr. Bungard's conduct in not calling Defendant to testify at sentencing fell below an objective standard of reasonableness or that it unduly prejudiced his defense.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the Defendant is not entitled to relief on Ground Eight of his section 2255 motion.

<u>**RECOMMENDATION**</u>

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY**  Defendant's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 (ECF No. 87) and dismiss this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendations within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendations to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendations, to mail a copy of the same to Defendant at **430 4th Street, Mason, WV 25260**[3], and to transmit a copy to counsel of record.

June 19, 2018

Dwane L. Tinsley
United States Magistrate Judge

---

[3]  On February 9, 2018, Defendant was released from the custody of the Federal Bureau of Prisons to begin serving his term of supervised release.  According to the United States Probation Office, this is Defendant's current address.